Paul JEFFRIES, Plaintiff-Appellant,

v.

CHICAGO TRANSIT AUTHORITY, Defendant-Appellee.

No. 84–2386.

United States Court of Appeals, Seventh Circuit.

Argued June 6, 1985.

Decided Aug. 15, 1985.

Rehearing and Rehearing En Banc Denied Sept. 30, 1985.

Barry Sullivan, Jenner & Block, Chicago, Ill., for plaintiff-appellant.

Loretta Weber Cooney, Chicago Transit Authority, Chicago, Ill., for defendant-appellee.

Before CUMMINGS, Chief Judge, WOOD, Circuit Judge, and WRIGHT, Senior Circuit Judge.*

EUGENE A. WRIGHT, Senior Circuit Judge.

In this protracted employment discrimination dispute, we must decide if laches bars Jeffries' action against the Chicago Transit Authority (CTA).

## FACTS

In August 1974, Jeffries applied for a train conductor position with the CTA. He was rejected on November 4 of that year because a medical examination revealed that he suffered from sickle cell anemia, a blood disorder which has a disproportionate impact upon black persons. The disease disqualified him for any operating position. He was approved for non-operating work but did not pass a required exam.

On November 11, 1974, he filed a complaint with the EEOC charging the CTA with racial discrimination in violation of Title VII. His theory was that, because the majority of victims of sickle cell anemia are black, it was discriminatory to decline to hire blacks for any job on the ground that they had the disease.

On February 19, 1975, Jeffries filed an identical claim with the Illinois Fair Employment Practices Commission (FEPC).[1] It was dismissed on the ground that active sickle cell anemia is a legitimate non-discriminatory reason for not hiring him in an operating position.

The EEOC notified the CTA of the charge and it responded on December 17, 1974 denying the allegation of discrimination. The EEOC took no further action on the claim until June 9, 1982, when it informed the CTA that reasonable cause existed for the discrimination claim and invited the CTA to participate in conciliation.

The CTA responded on July 28, 1982, that the EEOC had lost jurisdiction over the matter because of the eight-year lapse between the charge and the reasonable cause determination. The CTA also requested reconsideration. On September 24, 1982, the EEOC responded that it adhered to its decision. On October 4, 1982, the CTA reasserted its position and declined to conciliate.

The EEOC issued a right-to-sue letter on January 12, 1984, authorizing Jeffries to bring a federal civil action within 90 days. He timely filed this suit on March 8, 1984. *See* 42 U.S.C. § 2000e–5(f)(1).

The CTA moved to dismiss or, in the alternative, for summary judgment, alleging that laches barred the action. It submitted affidavits indicating that several employees had either retired or left its employ. The affidavits indicated also that the location of records maintained by past employees was unknown and that dormant applications from 1974 had been destroyed as part of its regular retention-destruction schedule.

On July 11, 1984, the district judge granted the motion for summary judgment, holding that Jeffries' claim was barred by

---

* The Honorable Eugene A. Wright, Senior Circuit Judge of the United States Court of Appeals for the Ninth Circuit, is sitting by designation.

1. The FEPC was the state agency responsible for the initial investigation and resolution of claims of employment discrimination within Illinois.

*See* Ill.Stat.Ann. ch. 48, § 851 *et seq.* (1966) (repealed by P.A. 81–1216, § 10–108, effective July 1, 1980); *see also* 42 U.S.C. § 2000e–5. During the pendency of the FEPC charge, Jeffries was assisted by counsel on a *pro bono* basis.

laches. The CTA had established as a matter of law that Jeffries had inexcusably delayed in filing his Title VII complaint and that the CTA had been unduly prejudiced by the delay.

## ANALYSIS

■ Laches will bar this claim only if Jeffries had inexcusably delayed in asserting it and the CTA has been materially prejudiced by the delay. *See Occidental Life Ins. Co. v. EEOC,* 432 U.S. 355, 373, 97 S.Ct. 2447, 2458, 53 L.Ed.2d 402 (1977) (EEOC itself may be barred by laches from filing a Title VII lawsuit); *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975) (private plaintiff may be similarly barred by laches), *EEOC v. Massey-Ferguson, Inc.,* 622 F.2d 271, 275 (7th Cir.1980); *Cannon v. University of Health Sciences,* 710 F.2d 351, 359 (7th Cir.1983).

On a motion for summary judgment, the moving party must demonstrate that there are no genuine issues of material fact relating either to inexcusable delay or material prejudice. *Massey-Ferguson,* 622 F.2d at 276; *Boone v. Mechanical Specialities Co.,* 609 F.2d 956, 957 (9th Cir.1979). In determining whether the moving party has met this burden, we view the record and the inferences to be drawn from facts disclosed in the record in the light most favorable to the party opposing the motion. *Massey-Ferguson,* 622 F.2d at 276.

■ Laches is generally a factual question not subject to summary judgment. *See Albemarle,* 422 U.S. at 424, 95 S.Ct. at 2375 (delay and prejudice are factual issues); *Sandvik v. Alaska Packers Ass'n,* 609 F.2d 969, 974 (9th Cir.1979). Summary judgment is proper here because no genuine factual issues are in dispute. *See* Fed. R.Civ.P. 56(c).

The party opposing summary judgment must set forth specific facts showing that a genuine factual issue exists. *Posey v. Skyline Corp.,* 702 F.2d 102, 105 (7th Cir.) *cert. denied,* —— U.S. ——, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). *See also Walaschek & Assoc., Inc. v. Crow,* 733 F.2d 51, 53 (7th Cir.1984) (facts showing defense requires opposing party to show he has plausible ground for suit).

Jeffries by his affidavit showed that he had not been represented by an attorney since December 11, 1975, the day after judgment was entered against him in the Illinois FEPC case. He explained that he had done nothing to prod the EEOC to resolve his charge on a more expeditious basis because in 1975 certain EEOC officials had advised him that he should do nothing about his case until he heard from the agency.

These statements are insufficient to raise any factual issue requiring resolution at trial. For purposes of summary judgment review, we assume that they are true.

Rule 56(c) also requires that the moving party be entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Jeffries argues that the facts raised by the CTA do not permit a finding of laches here. *See Fowler v. Blue Bell, Inc.,* 596 F.2d 1276, 1279 (5th Cir.1979), *cert. denied,* 444 U.S. 1018, 100 S.Ct. 671, 62 L.Ed.2d 648 (1980) (failure to submit controverted evidence to the trial court is irrelevant where argument is that uncontroverted facts do not establish laches); *Massey-Ferguson,* 622 F.2d at 276 (*"Once* delay and prejudice are established, the district court may, in its discretion, apply the doctrine of laches . . . ." [emphasis added]).

■ The CTA has the burden of proving both inexcusable delay and resulting prejudice. *EEOC v. Great Atlantic & Pacific Tea Co.,* 735 F.2d 69, 80 (3d Cir.) *cert. dismissed,* —— U.S. ——, 105 S.Ct. 307, 83 L.Ed.2d 241 (1984).

### A. Inexcusable Delay

■ The delay must be both unreasonable and inexcusable. *Cannon,* 710 F.2d at 359. In finding that it was inexcusable, the district court relied on these factors: (1) Jeffries showed alacrity in filing the EEOC complaint and prosecuting the state claim; (2) he had counsel for one year; (3) he could not rule out that counsel had

helped him with his EEOC claim; (4) it should have been apparent that no administrative resolution was imminent long before 1982; (5) he could have requested a right-to-sue letter; and (6) he did nothing in the ten years between filing the charge and this suit.

■ The ten-year delay was manifestly unreasonable. *See EEOC v. Liberty Loan Corp.*, 584 F.2d 853, 858 (8th Cir.1978) (delay gave rise to inference of unreasonableness); *Cannon*, 710 F.2d at 359 (relying on EEOC cases, court finds that private litigant's delay of between 3 years/8 months and 5 years unreasonable).

Nor can it be excused. Jeffries did nothing for at least nine years. He did not call or write to the EEOC. Although the CTA has the burden of proving unreasonable delay, Jeffries should have explained it as he was the party with any pertinent evidence. *See id.; Coalition for Canyon Preservation v. Bowers*, 632 F.2d 774, 779 (9th Cir.1980) (one element of delay is attempt by party to contact agency).

Jeffries' major justification is ignorance of the statute and regulations giving him the option to request a right-to-sue letter. He should have known of his power to prod the agency through the language of the statute. *See* 42 U.S.C. § 2000e–5(f)(1); *Lynn v. Western Gillette, Inc.*, 564 F.2d 1282 (9th Cir.1977). The statute is somewhat unclear but a lay person would know at least that the EEOC could do something in 180 days. *See Mohasco Corp. v. Silver*, 447 U.S. 807, 828, 100 S.Ct. 2486, 2498, 65 L.Ed.2d 532 (1980) (lay person could understand somewhat ambiguous Title VII filing requirements). Regardless of any ambiguity, he should at least have reached the agency. *See Gifford v. Atchison, Topeka and Santa Fe Ry. Co.*, 685 F.2d 1149, 1152 (9th Cir.1982) (plaintiff repeatedly sought input to the EEOC action and the agency assured her it would file suit on her behalf).

■ Relying on the administrative process cannot excuse a delay of this length. *See Cannon*, 710 F.2d at 360. Nor can

inability to pay counsel excuse delay in light of Title VII's attorney's fees provision. *See Gifford*, 685 F.2d at 1158 (Wright, J., concurring).

Jeffries argues that the district court's determination of inexcusable delay rests partly on a credibility determination. The court noted that Jeffries is "not as unsophisticated as he makes himself out to be." Even crediting Jeffries' statements, no material issues of fact are raised. The delay barring this claim dates from the time Jeffries spoke with the EEOC in 1975 and the time he filed suit in 1984. *See Lynn*, 564 F.2d at 1287 ("complainant should not be permitted to prejudice employer by taking advantage of the Commission's slowness in processing claims ...").

## B. Material Prejudice

■ To establish material prejudice in a private discrimination suit, we require only that defendant show "some prejudicial 'change in the condition or regulations of the ... parties.'" *Cannon*, 710 F.2d at 362, quoting *Holmberg v. Armbrecht*, 327 U.S. 392, 396, 66 S.Ct. 582, 584, 90 L.Ed. 743 (1946). The longer the delay, the less prejudice defendant must establish. *Gifford*, 685 F.2d at 1158 (Wright, J., concurring).

■ The CTA affidavits establish such prejudice under *Cannon*. The man in charge of the CTA's medical department in 1974 retired in 1977, is seventy years old and is thought to be living in Connecticut. The director of personnel had retired in 1977, was subsequently in poor health, and died in 1985. Their boss, the general manager of administration, left the CTA in 1976 and his whereabouts are unknown. Remaining personnel had little or no memory of events that transpired over ten years ago. Relevant employment and medical records have been destroyed according to the CTA's retention-destruction schedule or lost.

Jeffries asserts that CTA has failed to show that it has suffered prejudice because it has not established that the former employees are unavailable. The Fifth Circuit

appears to require that unavailability be shown. *See e.g. Bernard v. Gulf Oil Co.,* 596 F.2d 1249, 1255 (5th Cir.1979) *rev'd on other grounds en banc,* 619 F.2d 459 (5th Cir.1980) *aff'd,* 452 U.S. 89, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981); *Flower,* 596 F.2d at 1279–80. *See also Great Atlantic & Pacific Tea Co.,* 735 F.2d at 84 (requires unavailability in dictum). This is too narrow a reading of the prejudice requirement. It is enough that the CTA "face[s] the hardship of locating the former employees and procuring their testimony...." *Liberty Loan,* 584 F.2d at 858.

Jeffries argues that the CTA cannot be prejudiced by lack of records it destroyed or lost because it had a duty under the regulations to retain them. Neither argument succeeds.

■ That the CTA lost or destroyed records through a business retention-destruction schedule does not impute any bad faith or consciousness of guilt. *See Liberty Loan,* 584 F.2d 853, 858 (8th Cir.1978) (records consolidated and some lost). It had no duty to mitigate the prejudice occurring over time. *See Boone,* 609 F.2d at 959.

■ 29 C.F.R. § 1602.14(a) (1984)[2] requires an employer to keep employment records relevant to a charge of discrimination until the date of expiration of the statutory period within which an action may be filed or if an action is filed, on its termination date. We do not read the regulation to require the CTA to maintain records indefinately. A charge was filed in December 1974. It denied the charge and heard nothing for eight years. *See Boone,* 609 F.2d at 959–60 (notice of charge lying dormant; no affirmative duty absent continuing administration proceedings).

The Fifth Circuit cases of *Fowler* and *Bernard* are again distinguishable. An administrative investigation was ongoing in both cases. *See* 596 F.2d at 1279; 596 F.2d at 1256. The employer had notice of his continuing obligation to retain records.

The district court found that the former employees were important to CTA's possible defense of this discrimination charge. We agree. Those involved in establishing the sickle cell policy and in making the individual hearing decisions are gone.

We review the laches application under an abuse of discretion standard. *Albemarle,* 422 U.S. at 416–18, 95 S.Ct. at 2370–72; *Cannon,* 710 F.2d at 359; *Massey-Ferguson,* 622 F.2d at 276. The district court must exercise its discretion in light of the purposes of Title VII. *Albemarle,* 422 U.S. at 416–18, 95 S.Ct. at 2370–72.

The Supreme Court has observed that Congress intended for " 'cooperation and voluntary compliance [to be] the preferred' means for achieving' the goal of equality of employment opportunities." *Occidental Life Ins. Co.,* 432 U.S. at 367–68, 97 S.Ct. at 2454–56. Courts have recognized that the "legislatively and judicially favored method of resolving Title VII claims is through the EEOC administrative process." *See, e.g., Howard v. Roadway Express, Inc.,* 726 F.2d 1529, 1532–33 (11th Cir. 1984); *Fowler,* 596 F.2d at 1279.

Jeffries argues that it would be antithetical to Congress' "preferred" method of resolving Title VII claims if victims of discrimination could be guilty of laches for allowing the EEOC's administrative process to run its course before filing suit in federal court. *Howard,* 726 F.2d at 1533 (plaintiff cannot be faulted for failing to file a Title VII claim until completion of the EEOC process); *Stallworth v. Monsanto Corp.,* 21 Fair Empl.Prac.Cas. (BNA) 364, 366 (N.D.Fla.1979) (failure to file suit until after termination of the EEOC's "active, continuing administration process" cannot justify a laches dismissal of a Title VII claim) (citing *Fowler,* 596 F.2d 1276, and *Bernard,* 596 F.2d 1249).

■ A plaintiff does not have an absolute right to await termination of EEOC proceedings. *See Cannon,* 710 F.2d at 360 (sex and age discrimination charges filed within 90 days of right-to-sue letter barred

---

**2.** Formerly 29 C.F.R. § 1602.14 (1974), but in all     relevant aspects the same.

by laches); *Boone,* 609 F.2d 956; *Kambe-ros v. GTE Automatic Electric, Inc.,* 603 F.2d 598 (7th Cir.1979) *cert. denied,* 454 U.S. 1060, 102 S.Ct. 612, 70 L.Ed.2d 599 (1981). We need not decide if one in Jeffries' position must necessarily demand a right-to-sue letter. *But see Brown v. Continental Can Co.,* 765 F.2d 810, 814 (9th Cir.1985) (complainants not required to request right-to-sue letter). We do require such persons to show some interest in prosecuting their claims.

### CONCLUSION

Summary judgment was properly granted against Jeffries. His affidavits do not establish that any material facts are in dispute. The CTA has shown inexcusable delay by Jeffries and resulting prejudice as a matter of law.

AFFIRMED.